**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

ASHLEY NICHOLAS,                          *
                                          *
    Plaintiff,                    *
                                          *
vs.                                       * CIVIL ACTION NO. 16-000513-B
                                          *
NANCY BERRYHILL,[1]                       *
Acting Commissioner of Social             *
Security,                                 *
                                          *
    Defendant.                    *

**ORDER**

Plaintiff Ashley Nicholas (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. On October 5, 2017, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 14). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED**

---

[1] Nancy Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

that the decision of the Commissioner be **AFFIRMED**.

I.  **Procedural History**[2]

Plaintiff protectively filed her application for benefits on January 21, 2013, alleging disability beginning January 1, 2010, based on "fibromyalgia, depression, anxiety, hypertension, high cholesterol, insomnia, loss of motor function, limited ambulation, burn, and obesity." (Doc. 7-6 at 4, 7). Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Linda J. Helm on September 26, 2014. (Doc. 7-2 at 63). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Id.). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Doc. 7-2 at 94). On May 28, 2015, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Doc. 7-2 at 47). The Appeals Council denied Plaintiff's request for review on August 8, 2016. (Doc. 7-2 at 2). Therefore, the ALJ's decision dated May 28, 2015, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument

---

[2] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF. Because the transcript is divided into separate documents, the Court's citations include the appropriate CM/ECF document number.

was conducted on October 26, 2017 (Doc. 17), and the parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

1. **Whether the ALJ erred in failing to assign controlling weight to the opinions of treating physician, Dr. Paul Smith, M.D., while assigning great weight to the opinions of consultative physician, Dr. Nathaniel Hernandez, M.D.?**

2. **Whether the ALJ erred in failing to find that Plaintiff's fibromyalgia, in combination with her rheumatoid arthritis, medically equaled Listing 14.09D?[3]**

## III. Factual Background

Plaintiff was born on August 16, 1964, and was fifty years of age at the time of her administrative hearing on September 26, 2014. (Doc. 7-2 at 69; Doc. 7-6 at 4). Plaintiff graduated from high school and took college courses in nursing for one month. (Doc. 7-2 at 71).

Plaintiff has worked intermittently as a fast food worker, domestic housekeeper, and hospital cleaner from 2009 to 2011. (Doc. 7-2 at 72-74, 95-97). At the administrative hearing,

---

[3] Plaintiff also raises an issue related to the ALJ's treatment of her fibromyalgia under SSR 12-2p. The Court will consider all of Plaintiff's arguments related to her fibromyalgia together.

Plaintiff testified that she cannot work now because she cannot stand more than ten minutes because of hip pain; she has trouble concentrating; and her medications make her disoriented. (Doc. 7-2 at 75, 77, 91). Plaintiff's medications include Lyrica for fibromyalgia, Xanax for insomnia, Viibryd for depression, and Mobic for pain in her back and legs, and she reported that all of them provide her with some relief. (Doc. 7-2 at 76, 84, 90). The side effects from Plaintiff's medications include weight gain and nervousness/shaking. (Doc. 7-2 at 91, 94).

## IV. Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v.

---

[4] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

_Heckler_, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. _Chester v. Bowen_, 792 F. 2d 129, 131 (11th Cir. 1986); _Short v. Apfel_, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**V.    Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); _see also_ 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability

to perform those jobs in order to be found disabled.  <u>Jones v.</u>
<u>Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999).  <u>See also</u> <u>Hale v.</u>
<u>Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing <u>Francis v.</u>
<u>Heckler</u>, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI.  <u>Discussion</u>**

> **A. Substantial evidence supports the weight that the ALJ accorded to the expert medical opinions in this case.**

Plaintiff argues that the ALJ erred in assigning little weight to the opinions of her treating physician, Dr. Paul Smith, M.D., while assigning great weight to the opinion of consultative internist, Dr. Nathaniel Hernandez, M.D. (Doc. 7-7 at 110; Doc. 8 at 2-8).  Defendant counters that substantial evidence supports the ALJ's assignment of weight to the expert opinions in this case, as well as the ALJ's determination that Plaintiff has the RFC to perform a range of light work.  (Doc. 11 at 6).  Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

In this case, the ALJ found at step two of the sequential evaluation process that Plaintiff has the severe impairments of degenerative disc disease, osteoarthritis, fibromyalgia, obesity, affective disorder/depression with anxiety, and

hypertension/history of burn.[5] (Doc. 7-2 at 49). The ALJ
determined that Plaintiff's respiratory impairment and
hypercholesterolemia were not severe impairments.[6] (Doc. 7-2 at
51). The ALJ also concluded that Plaintiff has the Residual
Functional Capacity for light work, with the following
restrictions: "she can lift and carry 20 pounds occasionally and
10 pounds frequently; she must alternate between sitting,
standing, and walking about every hour but would not need to
leave the workstation; she can push and pull within the cited
weight tolerances, but is limited to occasional operation of
foot controls bilaterally; she can occasionally climb ramps and
stairs but never ladders, ropes or scaffolds: she can
occasionally balance, stoop and crouch but never kneel or crawl;
she must avoid unprotected heights and moving mechanical parts;
she must avoid tasks involving a variety of instructions or
tasks but is able to understand to carry out simple 1- or 2-step
instructions; she can understand to carry out detailed but
uninvolved written or oral instructions involving a few concrete
variables in or from standardized situations; she can tolerate
occasional contact with coworkers, primarily superficial and

---

[5] The ALJ found, "[w]hile not severe individually, . . . [the]
hypertension and a history of burn [are] severe in combination."
(Doc. 7-2 at 50).

[6] Plaintiff does not challenge the ALJ's finding related to her
non-severe impairments.

without teamwork requirements; she cannot interact with the public; when dealing with changes in the work setting, she is limited to simple work-related decisions." (Doc. 7-2 at 53). Based on the testimony of the VE, in conjunction with the other evidence of record, the ALJ found that, Plaintiff cannot perform her past work as a fast food worker, domestic housekeeper, or hospital cleaner; however, she can perform the jobs of bench assembler, office helper, and garment sorter, all light and unskilled. (Doc. 7-2 at 57, 100-01). Therefore, the ALJ concluded that Plaintiff is not disabled.

Residual functional capacity is a measure of what a claimant can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the claimant's residual functional capacity ("RFC"), the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v.

_Heckler_, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet her burden in this case.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See _Winschel v. Commissioner of Soc. Sec._, 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See _Williams v. Astrue_, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. _Costigan v. Commissioner, Soc. Sec. Admin._, 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing _Crawford v. Commissioner of Soc. Sec._, 363 F.3d 1155, 1160 (11th Cir. 2004) and _Broughton v. Heckler_, 776 F.2d 960, 962 (11th Cir. 1985)). However, the opinion of "a one-time examining physician — or psychologist" is not entitled to the same deference as a treating physician. _Petty v. Astrue_, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing _Crawford_, 363 F.3d at 1160). An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants

because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

The Court turns first to Plaintiff's claim that the ALJ erred in failing to assign controlling weight to the opinions of

her treating physician, Dr. Smith, contained in the June 5, 2014, questionnaire and clinical assessment of pain forms. (Doc. 7-7 at 155). The record reflects that Dr. Smith treated Plaintiff from 2010 to 2015 for low back pain, fibromyalgia, and depression. (Id.). On June 5, 2014, Dr. Smith opined in the questionnaire form that Plaintiff's low back pain prevents her from working. (Id.). In the clinical assessment of pain form, Dr. Smith stated that it was his opinion that physical activity would greatly increase Plaintiff's symptoms and cause distraction from task or total abandonment of task and that she could not engage in any form of gainful employment due to her low back pain. (Doc. 7-7 at 155-56).

The ALJ gave little weight to Dr. Smith's opinions and explained as follows:

> Giving the claimant the benefit of the doubt, I find disc degeneration, osteoarthrosis and fibromyalgia severe, despite a noteworthy lack of objective medical evidence. The claimant's primary care provider is internist Paul Smith, M.D. (Dr. Smith) of Smith & Gayle Medical Center, whose records reveal long-standing reports of low back pain by the claimant since the establishment of care in 2010. However, the overall medical record contains scant clinical findings to establish the claimant with significant joint dysfunction or disc impairment of the lumbar, thoracic or cervical spine at the time of alleged onset in 2010 (Exhibits 7F, 16F, testimony). In fact, the only radiology in evidence comprises x-rays of the pelvis and sacrum from October 2013, with findings of facet joint arthropathy at L4-L5 and minor osteoarthritis of the SI joints bilaterally which an attending physician cited as

within normal limits (Exhibit 11F/2, 4-5).

Nonetheless, Dr. Smith's records show that early in 2010, he began prescribing NSAID and narcotic medication of Motrin and Lortab, along with the muscle relaxant Soma to address low back pain, with Lyrica added a few months later for purported fibromyalgia (Exhibits 7F, 10F). Significantly, these records lack objective data, where they primarily reiterate the claimant's subjective reports (i.e. "insomnia is improved," Exhibit 7F/34), with only check marks on a form indicating normal physical examinations followed by a terse summary diagnosis ("low back pain," Exhibit 7F/35) and the medications dispensed. Dr. Smith does not provide clinical findings to corroborate the claimant's allegations, such as an impaired gait, or demonstrated loss of motion or strength because of observed dysfunction with the hands, major joints or spine (Exhibits 7F, 10F). . . . .

Dr. Smith's records do cite fibromyalgia and low back pain, yet despite his status as a treating provider, I cannot give controlling weight to his findings in the absence of objective, corroborative medical data. As already noted, his office records are terse, subjective in nature, and seriously deficient in providing appropriate data as to the claimant's physiological functional ability. Moreover, in 2010, he initiated Lyrica without laboratory evidence of fibromyalgia, and began prescribing narcotics (Lortab, later changed to Norco) despite consistently normal findings on musculoskeletal and neurological examinations (Exhibits 7F, 10F). Indeed, a review of 3 years of treatment records reveals only a *single* notation of paraspinal muscle tenderness, on September 16, 2010 (emphasis added), but where the majority of the data merely relates the claimant's subjective statements that various medication "help" (Lyrica for fibro, Lortab/Norco for back pain and Xanax for insomnia) (Exhibits 7F, 10F, 12F).

Evidently, Dr. Smith has also not seen a need for

escalated care, since he has not referred his patient to a pain specialist or orthopaedist, nor has he requested x-rays to more clearly establish the etiology of the claimant's symptoms. The only x-rays on record were taken in 2013; 3 years after the establishment of care with Dr. Smith and they were not done at the request of the primary care provider. Rather, they were taken when the claimant went to the emergency room once after she experienced an episode of sacral pain radiating into the leg, and where she reported a fall about a year before; an event found nowhere else in the treatment record (Exhibit 11F/1). Despite the claimant's testimony that Dr. Smith has recommended she see a specialist, which she reportedly has not done due to financial constraint, this remains subjective and without verification in the medical record (Exhibits 7F, 10F).

Consequently, I accord very little weight to a questionnaire and pain assessment completed by Dr. Smith in June 2014 (Exhibit 15F). He asserts that the claimant "cannot work" due to low back pain, which, aside from the fact such a determination is reserved to the Commissioner (SSR 96-5p), is inconsistent with his treatment records and with the record as a whole. Additionally, rather than citing actual clinical findings to support his diagnosis, the doctor instead cited only "patient history" as his foundation (Exhibit 15F/2). Finally, contradicting his previous statement that Ms. Nicholas cannot work, Dr. Smith replied "yes" to this question:

> Can the claimant engage in any form of gainful employment on a repetitive, competitive and productive basis over an eight hour work day, forty hours a week, without missing more than 2 days of work per month or experiencing frequent interruptions to his/her work routine due to symptoms of his/her disease or medical problems?

A treating physician's opinion is given controlling weight only when it is well supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record. . . .

The consultative examination by Dr. Hernandez at MDSI is more comprehensive, and more in line with the overall record, and so I accord it great weight. In May 2013, Dr. Hernandez assessed fibromyalgia, and proposed the claimant with a light exertional capacity. The doctor also highlighted no trigger points present below the waist, only at the shoulders and scapulae bilaterally; although he did observe ankle edema (Exhibit 8F). This is synchronous with other inconsistencies found in the objective record as a whole, i.e. the claimant complains of low back pain, but Dr. Hernandez reported very little in the way of clinical findings associated with this condition. For instance, he found negative straight leg raises, no instability or gait impairment, good range of motion in the hips and lumbar spine, full strength and sensation in all extremities and a normal grip, despite evidence of a skin graft on the left arm (Exhibit 8F).

Dr. Hunte's examination a year later is given less weight due to contradictory data, and the claimant's failure to cooperate. Particularly, Ms. Nicholas refused to walk or squat during the physical, and she later testified the reason was she was having a "very bad day" with regard to hip pain (Exhibit 13F, testimony). Yet by contrast, Dr. Hunte found no limits on range of motion in the hips, spine, ankles or knees, and he opined the claimant exaggerated her symptoms. In light of this, the doctor's accompanying RFC form is given little evidentiary weight. First, he proposed physical parameters, but then undercut his findings by writing, "I am unsure regarding this person's work potential because she was uncooperative and histrionic" (Exhibit 13F/10). Second, he suggested the claimant "may need 2-4 hours of bed rest/day (Exhibit 13F/6), which is internally inconsistent with other portions of the form, since he found her able to sit, stand and walk for an entire 8-hour day

(Exhibit 13F/6). . . .

    In sum, DDS evaluations; consultative
    examinations; treatment records, function reports
    and the overall record support the above RFC
    assessment. The preponderance of objective
    evidence, when considered in light of a dearth of
    corroborating data, fails to demonstrate the
    claimant experiences the extreme level of pain
    and physical or psychological problems that she
    professes. While some data does support episodic
    back and joint myofascial pain, along with a lack
    of interest and social avoidance, the overall
    record shows she retains the capacity for a range
    of light work as set forth in the assigned RFC.

(Doc. 7-2 at 49-56).

    The record supports the ALJ's findings related to Dr.
Smith's treatment of Plaintiff's back condition. As the ALJ
found, Dr. Smith treated Plaintiff's allegedly debilitating pain
with medication only; he ordered no x-rays, nor are there any x-
rays or other objective clinical evidence which would support
the severity of Plaintiff's complaints of pain;[7] and Dr. Smith's
objective, physical examination findings related to Plaintiff's
"musculoskeletal/back" were consistently normal.[8]  (Doc. 7-7 at

_____

[7] As the ALJ found, the only x-rays in the record are two x-rays
taken in the hospital on October 8, 2013, when Plaintiff
presented with complaints of sacral pain radiating down her leg.
(Doc. 7-7 at 130-34).  The x-rays of Plaintiff's pelvis and
sacrum show degenerative changes in hips and lower lumbar spine
and "mild" osteoarthritis of the hips and sacroiliac joints,
described as "WNL" (within normal limits).  (Doc. 7-7 at 131,
133-34).

[8] As the ALJ noted, while Dr. Smith's notes are terse, they
indicate consistently normal examination findings.
Specifically, the form that Dr. Smith used to record his

73-107, 124-29, 136, 150-52, 166-73).  The record also supports the ALJ's finding that Dr. Smith's opinions are internally inconsistent, as he opined in the diagnosis questionnaire form dated June 5, 2014, that Plaintiff *cannot* work because of her pain and in the clinical assessment of pain form completed on the same date that Plaintiff *can* work.  (Doc. 7-7 at 155-57).

Also, as the ALJ found, Dr. Smith's opinion that Plaintiff cannot work due to the severity of her low back pain is inconsistent with the findings and opinions of consultative physicians, Dr. Hernandez and Dr. Hunte.  The record shows that Dr. Nathaniel Hernandez, M.D., examined Plaintiff on May 4, 2013, and found that she had tenderness around her bilateral shoulders and right scapula and left ankle swelling.  (Doc. 7-7 at 110-12).  However, as the ALJ noted, Dr. Hernandez also found that Plaintiff had a normal gait, no tenderness in bilateral lower extremities, 5/5 strength in bilateral upper extremities including grip, no atrophy, normal muscle bulk and tone, normal gross and fine motor skills with no evidence of tenderness or weakness, and a normal sensory exam throughout upper and lower

findings provided that categories indicated by a check mark had been examined and were found to be "normal" unless indicated otherwise.  (Doc. 7-7 at 107, 362).  The vast majority of Dr. Smith's progress notes, including the musculoskeletal exams, are without comment other than a check mark, indicating that his findings were normal. (Doc. 7-7 at 73-107, 124-29, 136, 150-52, 166-73).

extremities. (Doc. 7-7 at 112-14). Dr. Hernandez diagnosed Plaintiff with fibromyalgia and opined that she could stand/walk for six hours, sit without limitation, lift ten to twenty pounds occasionally and five to ten pounds frequently, had no limitations in reaching, handling, fingering, or feeling, and had no other limitations, including no need for an assistive device. (Doc. 7-7 at 114).

In addition, consultative physician, Dr. Eyston Hunte, M.D., examined Plaintiff on April 23, 2014, and noted that she refused to stand so that he could assess her height. Upon physical examination, Dr. Hunte noted normal upper and lower extremity strength with no motor deficit and no atrophy, normal range of motion in cervical spine with no tenderness, normal range of motion in lumbar spine with reported tenderness, normal range of motion in hips with reported tenderness, and normal deep tendon reflexes. (Doc. 7-7 at 140-43). Dr. Hunte noted, "this lady was uncooperative and demonstrated throughout the exam complaining of such severe pain in the right hip especially that she could not stand or walk or get onto the exam table. She had the assistance of her son when she tried to do anything. It is my belief that she was able to do more than what she actually did." (Doc. 7-7 at 141). Dr. Hunte also completed a Medical Source Statement, finding that Plaintiff could frequently lift twenty pounds, occasionally lift/carry up to

fifty pounds, sit for four hours, and stand/walk for two hours each.[9] (Doc. 7-7 at 144).

Also, as the ALJ found, the record contains evidence of Plaintiff's activities of daily living, which include the ability to care for herself, shop, drive, prepare simple meals, and perform light housework such as laundry, dishes, and making her bed. (Doc. 7-2 at 70; Doc. 7-6 at 20-22; Doc. 7-7 at 111).

In support of her argument that the ALJ erred in discrediting Dr. Smith's opinion that she cannot work due to her low back pain, Plaintiff points to treatment records showing that she was diagnosed with low back pain as early as 2010; that she was prescribed Lyrica; that she continued to complain of low back pain in 2014; that an x-ray of her pelvis in 2013 showed degenerative changes of bilateral hips and mild osteoarthritis of sacroiliac joints, described as "WNL" (within normal limits); and that consultative examiner, Dr. Hunte, found that she had "tenderness" over the lower lumbar area and diagnosed her with chronic pain syndrome, osteoarthrosis of pelvic region and thigh, degeneration of lumbar disc, and myalgia. (Doc. 8 at 4-5; Doc. 7-7 at 131-34, 143).

_____

[9] Dr. Hunte also opined that Plaintiff may need two to four hours of bedrest per day, which the ALJ rejected as inconsistent with Dr. Hunte's own findings that she could work a full eight-hour day. (Doc. 7-7 at 145). Dr. Hunte added that he was "unsure regarding this person's work potential because she was uncooperative and histrionic." (Doc. 7-7 at 149).

While this evidence supports the diagnoses of degenerative disc disease and osteoarthrosis in Plaintiff's lumbar spine and pelvis, it does not support the severity of limitation opined by Dr. Smith, nor does it alter the fact that Dr. Smith's opinion is inconsistent with his own treatment records and his related opinion that Plaintiff *can* work, as well as the remaining substantial medical evidence in the case and evidence of Plaintiff's activities of daily living. For these reasons, the ALJ had good cause to discredit Dr. Smith's opinions, and Plaintiff's claim that the ALJ erred in doing so is without merit.

Likewise, Plaintiff's argument that the ALJ erred in assigning great weight to the opinions of Dr. Hernandez fails. As detailed above, the findings and opinions of Dr. Hernandez are consistent with the normal examination findings of Dr. Smith, the normal examination findings of Dr. Hernandez and Dr. Hunte, and Plaintiff's activities of daily living. Therefore, Plaintiff's argument that the ALJ erred in assigning great weight to the opinion of Dr. Hernandez that Plaintiff can perform work at the light exertional level is without merit.

## B. Substantial evidence supports the ALJ's determination that Plaintiff's fibromyalgia and arthritis did not medically equal Listing 14.09D.

Next, Plaintiff argues that the ALJ erred in failing to

find that her fibromyalgia, in combination with her "rheumatoid arthritis," equaled Listing 14.09D (Inflammatory Arthritis). (Doc. 8 at 8). Plaintiff points out that, under SSR 12-2p, fibromyalgia cannot meet a Listing since there is no listing for such a condition; however, the ALJ must consider whether it medically equals a Listing, such as 14.09D, for inflammatory arthritis. (Doc. 8 at 9). Plaintiff's argument is unavailing.

First, as noted by Defendant, Plaintiff's argument presupposes a diagnosis for rheumatoid or inflammatory arthritis, which is nowhere in the record. To the contrary, the only diagnosis of arthritis in the record is that of osteoarthrosis by consultative examiner, Dr. Hunte (Doc. 7-7 at 143), which is supported by an x-ray of Plaintiff's pelvis taken on October 7, 2013, showing "mild osteoarthritis of the bilateral SI joints." (Doc. 7-7 at 133). Given the absence of even a diagnosis of rheumatoid or inflammatory arthritis, Plaintiff's argument that her condition equaled Listing 14.09D (Inflammatory Arthritis) cannot succeed.[10] See Moses v. Berryhill, 2017 U.S. Dist. LEXIS 10192, *8, 2017 WL 372981, *3 (M.D. Ala. Jan. 25, 2017) (finding that Plaintiff did not meet Listing 14.09D where Plaintiff had not been diagnosed with

---

[10] Notably, the ALJ considered Plaintiff's osteoarthritis and fibromyalgia in relation to Listing 1.02 (Major Dysfunction of a Joint) and concluded that the conditions did not equal the Listing. (Doc. 7-2 at 51; Doc. 8 at 9). Plaintiff does not challenge that finding.

inflammatory arthritis during the adjudication period).

Moreover, Listing 14.09D, Inflammatory Arthritis, expressly requires:

> D. Repeated manifestations of inflammatory arthritis with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence and pace.

See 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 14.09D; see also Grace v. Colvin, 2016 U.S. Dist. LEXIS 108847, *14, 2016 WL 4379477, *5 (N.D. Ala. Aug. 17, 2016) ("to equal Listing 14.09, 'the claimant would have to demonstrate that her [fibromyalgia] had caused . . . repeated inflammation with *marked* limitations in the claimant's functional domains.'") (emphasis added).

In this case, not only has Plaintiff failed to establish a diagnosis of inflammatory or rheumatoid arthritis, she has also failed to establish repeated manifestations of inflammatory arthritis with signs such as, severe fatigue, fever, malaise, or involuntary weight loss *and* a "marked" limitation in either activities of daily living, maintaining social functioning, or

in completing tasks in a timely manner due to deficiencies in concentration, persistence and pace. To the contrary, the ALJ found that Plaintiff had only a mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence or pace. (Doc. 7-2 at 52). Plaintiff does not challenge the ALJ's findings in this regard. Therefore, for each of these reasons, Plaintiff's argument that the ALJ erred in failing to find that her fibromyalgia and "rheumatoid arthritis" equaled Listing 14.09D is without merit.

Last, Plaintiff argues that the ALJ erred in failing to properly assess the waxing and waning nature of her fibromyalgia under SSR 12-2p. (Doc. 8 at 9). Specifically, Plaintiff argues that SSR 12-2p emphasizes the importance of longitudinal information given the recognition that fibromyalgia can involve varying signs and symptoms; yet, consultative examiner, Dr. Hernandez, noted in his evaluation on May 4, 2013, that he did not review any of Plaintiff's past medical records prior to the examination. (Doc. 7-7 at 110). According to Plaintiff, the ALJ indicated that he gave great weight to Dr. Hernandez's opinions because they were more comprehensive than Dr. Smith's opinions and more consistent with the overall record; however, by giving great weight to Dr. Hernandez's opinions, when he did not review her past medical records, the ALJ failed to properly

assess the waxing and waning nature of her fibromyalgia, as required by SSR 12-2p. Plaintiff's argument is misplaced.

SSR 12-2p provides that "[b]ecause the symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days, it is important that the medical source who conducts the CE [consultative examination] has access to longitudinal information about the person. However, we may rely on the CE report even if the person who conducts the CE did not have access to longitudinal evidence if we determine that the CE is the most probative evidence in the case record." SSR 12-2p, 2012 WL 3104869.

While Plaintiff is correct that Dr. Hernandez did not have access to her longitudinal information before performing his evaluation, there is no question that his opinions are consistent with the longitudinal medical record in this case, including Dr. Smith's consistently normal examination findings, and Dr. Hunte's normal examination findings. Moreover, there is no question that Dr. Hernandez's opinions are consistent with his own physical examination findings,[11] as well as the evidence

---

[11] As previously discussed, Dr. Hernandez diagnosed Plaintiff with fibromyalgia but found that she had a normal gait, no tenderness in bilateral lower extremities, 5/5 strength in bilateral upper extremities including grip, no atrophy, normal muscle bulk and tone, normal gross and fine motor skills with no evidence of tenderness or weakness, normal sensory exam throughout upper and lower extremities; that she could stand/walk for six hours, sit without limitation, lift ten to twenty pounds occasionally and

of Plaintiff's activities of daily living. Also, while Dr. Hernandez did not have the benefit of Plaintiff's longitudinal medical records, the ALJ did have access to the longitudinal medical records, and even considering the waxing and waning nature of fibromyalgia, the substantial objective medical evidence in this case does not support limitations in excess of Plaintiff's RFC. Accordingly, for each of these reasons, Plaintiff's arguments related to the ALJ's consideration of her fibromyalgia are without merit.

Last, the Court finds that the substantial evidence in this case, detailed above, supports the RFC for light work, with the stated restrictions. Indeed, Plaintiff has failed to show that any limitations caused by her impairments exceed the RFC and are not accommodated by the stated restrictions.

Accordingly, the Court finds that Plaintiff's claims are without merit.

## VII. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for

---

five to ten pounds frequently; that she had no limitations in reaching, handling, fingering, or feeling; and that she had no other limitations, including no need for an assistive device. (Doc. 7-7 at 112-14).

supplemental security income be **AFFIRMED.**

       **DONE** this **8th** day of **March, 2018.**

                                       **/s/ SONJA F. BIVINS**
                                **UNITED STATES MAGISTRATE JUDGE**